UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BRANDON D. TUCKER                          CIVIL ACTION

VERSUS                                     NO. 15-1811

SHERIFF MARLIN N. GUSMAN                   SECTION "E" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Brandon D. Tucker, is a prisoner currently incarcerated in the Orleans Parish Prison system ("OPP").  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against the Orleans Parish Criminal Sheriff Marlin N. Gusman.  Tucker alleges that while incarcerated in OPP, he was subjected to various unconstitutional conditions of confinement and denied adequate medical treatment.  He seeks monetary damages. Record Doc. Nos. 1 and 9 (Complaint at ¶¶ IV and V; Statement of Facts).

On July 16, 2015, I conducted a telephone conference in this matter.  Participating were plaintiff pro se;  Charlin Fisher, counsel for defendants.  Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Tucker testified that he has been incarcerated as a pretrial detainee in the old jail building of OPP for about one year since his arrest on July 9, 2014, on charges of

attempted first degree murder and armed robbery.  He said that no trial date has yet been set for him in the state criminal court.  Tucker confirmed the assertions in his written submissions that his claims in this case arise from allegedly unconstitutional conditions of confinement in OPP and denial of adequate outdoor recreation activities. During his testimony, however, he also complained that his medical care for a foot fungus and rash he contracted allegedly as a result of the conditions has been inadequate.

Specifically, Tucker testified that he has been housed on Tier B-3 of the old OPP jail building throughout his incarceration.  He stated that he has been exposed to mold and mildew in the showers and on the ceiling.  He alleged that he has contracted a foot fungus as a result of his exposure to mold in the showers and that, although he was prescribed an erythromycin ointment by OPP medical personnel for that condition in March 2015, he had not yet received any of it.  He confirmed the accuracy of the notations to that effect in his medical records, which had been produced by defendant in response to my order, Record Doc. Nos. 6 and 15, except that Tucker testified that he had not refused the ointment at any time, as the records reflect.  Neither plaintiff nor defense counsel could confirm the accuracy of the notations in the medical records indicating that the prescribed ointment was "out of stock" at the jail.

Tucker testified that his foot condition was "rashing up right now," in that the fungal irritation had started small but was getting worse.  He complained that inmates

like himself are not provided with proper cleaning "chemicals" that might eliminate the mold and mildew from the showers.  He said that the exposure to mold and mildew gets worse with daily showering.  He said a nurse at the jail had checked his foot condition, but the condition is becoming more irritated.

Tucker testified that the inmates attempt to clean the mold and mildew daily with materials provided by jail staff and that "it helps to a certain extent," but does not eliminate the problem.  Tucker did not know specifically what kind of cleaning materials are being provided and used, but he said the inmates try to clean the shower area with the materials supplied.  He confirmed that jail personnel supply the inmates daily with cleaning fluid "in Styrofoam cups" and expect the inmates themselves to do the cleaning. He stated that sometimes the cleaning materials have "a strong odor," but he said they are not sufficient to eliminate the mold problem, despite the inmates' daily cleaning efforts.  He said that jail personnel also provide the inmates daily with a mop and broom to do the cleaning, but not with a shower brush to scrub the area.

Tucker also complained that the "eating table" in his jail unit is made of metal and is rusty and covered with old blue paint, and these conditions cause him to suffer skin irritation and itching.  He said he has to stand up to eat his food because he cannot sit and use the table to eat properly.

Tucker testified that his outdoor recreation opportunities are also insufficient. He said he is taken outside for recreation once a week to a courtyard equipped with basketball goals and enough room to walk around, play sports, play chess and "inhale the fresh air." He explained that his complaint concerning recreation is that he should be taken outdoors more than once a week.

At the conclusion of the conference, I ordered defendant immediately to provide plaintiff with the previously prescribed erythromycin ointment for his foot condition and to arrange to transport plaintiff to a physician for an examination of his condition for all purposes contemplated by Fed. R. Civ. P. 35. Defendant complied, and the records of that treatment and examination, defense counsel's letter dated July 27, 2015, and Dr. Xuong Nguyen's report have now been provided to the court and filed under seal in this matter. Record Doc. Nos. 14 and 16. Specifically, Dr. Nguyen's report states the following:

> This is a 26 year old male seen in sick call on June 16, 2015, with chief complaint of skin rash on right foot, with itching and slight inflammation. He was seen and followed up on 7/16/15 and diagnosed with skin rash, Tinea pedis fungal infection (Athletes' foot) and treated with povidone iodine ointment beginning on 7/16/15. When seen on 7/21/15, the skin rash on his right foot had decreased by 40%. He will be followed up on 7/25/15 for skin rash on right foot and Athletes' foot.
> . . . . He is scheduled to be seen for follow up on 7/25/15 for . . . skin rash. Mr. Tucker was previously treated for cellulitis. He was given Bact[r]im DS one tablet by mouth from 5/15/15 to 6/15/15 and this condition resolved.

As to the erythromycin ointment that plaintiff stated he had not received for his rash, Dr. Nguyen further stated in his report that "Mr. Tucker had been treated with Erythromycin <u>eye</u> ointment from 3/7/15-3/16/15, for an eye infection, which also, successfully resolved." <u>Id.</u>, Record Doc. No. 16-1 (Sealed Report) (emphasis added).

Before the <u>Spears</u> hearing, defendant filed a motion to dismiss plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6) on grounds of failure to state a claim upon which relief can be granted.  Record Doc. No. 3.  Plaintiff failed to file a response to defendant's motion, despite having been granted an extension of time to do so.  Record Doc. Nos. 7 and 12.  The motion remains pending and is addressed in this report.

<u>**ANALYSIS**</u>

I.   <u>STANDARDS OF REVIEW</u>

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); <u>Thompson v. Hicks</u>, 213 F. App'x 939, 942 (11th Cir. 2007); <u>Lewis v. Estes</u>, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); <u>Shakur v. Selsky</u>, 391 F.3d 106, 112 (2d Cir. 2004); <u>Martin v. Scott</u>, 156 F.3d 578, 579-80 (5th Cir. 1998);  <u>Lewis v. Sec'y, DOC</u>, No. 2:10-CV-547-FTM-29, 2013 WL 5288989, at *2 (M.D. Fla. Sept. 19, 2013), <u>aff'd</u>, 589 F. App'x 950 (11th Cir. 2014). Such complaints by prisoners must be dismissed upon review if they are frivolous or fail

to state a claim upon which relief can be granted.  28 U.S.C. § 1915A(b)(1); Lewis, 589

F. App'x at 952; Thompson, 213 F. App'x at 942; Shakur, 391 F.3d at 113; Carr v.

Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

     "A federal court may dismiss a claim in forma pauperis 'if satisfied that the action

is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994)

(quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as

amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis

v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th

Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on

an indisputably meritless legal theory, but also the unusual power to pierce the veil of the

complaint's factual allegations and dismiss those claims whose factual contentions are

clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th

Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

     The purpose of a Spears hearing is to dig beneath the conclusional allegations of

a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal

basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the

plaintiff an opportunity to verbalize his complaints, in a manner of communication more

comfortable to many prisoners."  Davis, 157 F.3d at 1005. The information elicited at

such an evidentiary hearing is in the nature of an amended complaint or a more definite

statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S. Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing."  Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'"  Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995);

Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous, because his claims lack an arguable basis in law, or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims.  Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a cognizable claim of violation of his constitutional rights under the broadest reading.[1]

---

[1]The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr.,

8

II.     <u>CONDITIONS OF CONFINEMENT</u>

Plaintiff's testimony confirmed his written allegations concerning unsanitary conditions during his incarceration in OPP.  Tucker was a pretrial detainee at all times that form the basis of his claims in this case.  Regardless whether an inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case.  <u>McCarty v. Zapata County</u>, 243 Fed. Appx. 792, 2007 WL 1191019, at *1 (5th Cir. Apr. 20, 2007) (citing <u>Gibbs v. Grimmette</u>, 254 F.3d 545, 547 (5th Cir. 2001); <u>Hare v. City of Corinth</u>, 74 F.3d 633, 636 (5th Cir. 1996)); <u>Olabisiomotosho v. City of Houston</u>, 185 F.3d 521, 526 (5th Cir. 1999). In <u>Hare</u>, the Fifth Circuit held

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

<u>Hare</u>, 74 F.3d at 650.

Here, nothing in plaintiff's written submissions or <u>Spears</u> testimony leads to an inference that the condition he described was the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an

_Inc._, 452 F. App'x 475, 476 (5th Cir. 2011) (quotation omitted); <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice."  Id. at 645. Thus, the complained-of harm is a particular act or omission of one or more officials, and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), applies.  Olabisiomotosho, 185 F.3d at 526; Tamez v. Manthey, No. 09-40310, 2009 WL 4324808, at *4 (5th Cir. 2009).

Applying this standard, Tucker's allegations do not rise to the level of violations of the Constitution.  Two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described.

First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."  Farmer v. Brennan, 511 U.S. 825, 847 (1994).  To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need for sanitary conditions."  Alexander v. Tippah County, 351 F.3d 626, 630 (5th Cir. 2003) (quoting Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)).

10

Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety.  <u>Farmer</u>, 511 U.S. at 847.  A prison official cannot be held liable "unless the official <u>knows of and disregards an excessive risk to inmate health or safety</u>; the official <u>must both be aware of facts</u> from which the inference could be drawn that a substantial risk of serious harm exists, and <u>he must also draw the inference</u>."  <u>Id.</u> at 837 (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a <u>stringent</u> standard of fault, requiring proof at a municipal actor disregarded a known or obvious consequence of his action." . . .  The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

<u>Southard v. Tex. Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (quoting <u>Bd. of County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added).  "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference."  <u>Norton</u>, 122 F.3d at 291 (citing <u>Farmer</u>, 511 U.S. at 838-40).

Tucker's written allegations and testimony meet neither of these two requirements. The conditions described by plaintiff, while plainly not comfortable or pleasant, do not rise to a level of seriousness constituting a constitutional violation.  Tucker conceded in his testimony that the only physical injury or illness he has suffered as a result of the allegedly unsanitary conditions was a foot rash, which has subsequently been diagnosed

as athlete's foot, a common and minor ailment found even among the non-incarcerated population.  Thus, he alleges no serious harm or risk of serious harm in the constitutional sense, and the court can perceive none under the circumstances described in plaintiff's testimony and written submissions.

Short term sanitation problems, although admittedly unpleasant, do not amount to constitutional violations.  Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994); Knop v. Johnson, 977 F.2d 996, 1013 (6th Cir. 1992); Robinson v. Illinois State Corr. Ctr., 890 F. Supp. 715, 720 (N.D. Ill. 1995).  "[J]ails must provide only reasonably adequate hygiene and sanitation conditions."  Burton v. Cameron County, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986)); accord Benshoof v. Layton, No. 09-6044, 2009 WL 3438004, at *4 (10th Cir. Oct. 27, 2009); Gates v. Cook, 376 F.3d 323, 342 (5th Cir. 2004).

Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences."  Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982).  Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions."  Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)); accord Hernandez v. Velasquez. 522 F.3d 556, 560 (5th Cir. 2008).

Tucker's allegations about mold, mildew, rust and dirty conditions at the jail fail to establish constitutional violations. See Davis, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell) (citing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); Davis v. St. Charles Parish Corr. Ctr., No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (Lemmon, J.) (citing Talib, 138 F.3d at 215); Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional.").

As the Fifth Circuit recently held in Brauner v. Coody, No. 12-314, 2015 WL 4393788, at *4-5 (M.D. La. July 17, 2015) (Africk, J.), no constitutional violation occurs when showers are cleaned twice a day with bleach, and the prisoner was provided a disinfectant spray bottle for his personal use. The court specifically noted that failure of prison officials to maintain germ-free showers is not cruel and unusual punishment.

In two cases, the Fifth Circuit has held that extreme, virtually permanent conditions of cells that contained excrement and other filth violate the Eighth

Amendment.  In Harper v. Showers, 174 F.3d 716, 716 (5th Cir. 1999), there were "continual" conditions of "filthy, sometimes feces-smeared cells," and in Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004), there were "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls."

By contrast, in Davis, the Fifth Circuit found no constitutional violation when a prisoner was locked in a "management cell" for three days, where the cell was, "according to Davis, 'just filthy, with 'blood on the walls and excretion on the floors and bread loaf on the floor.'" Davis, 157 F.3d at 1004, 1006.  The appeals court quoted the Supreme Court's holding that "'the length of confinement cannot be ignored. . . .  A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months.'" Id. at 1006 (quoting Hutto v. Finney, 437 U.S. 678, 686-87 (1978)). The Fifth Circuit found that "Davis did not suffer an extreme deprivation of any 'minimal civilized measure of life's necessities'" when he  was confined in the cell for only three days.  Id. (quoting Wilson v. Seiter, 501 U.S. 294, 304 (1991)).

When compared to the conditions described by the Fifth Circuit in the foregoing cases, the much less objectively unsanitary conditions described by Tucker do not rise to the level of a constitutional violation.  The conditions he experienced in OPP were neither virtually permanent nor an extreme deprivation of the type that might offend the

Constitution, and he suffered no <u>serious</u> physical injuries or ailments as a result of any allegedly unsanitary conditions.

Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim that defendants are responsible for constitutionally inadequate unsanitary conditions of confinement.  For all of the foregoing reasons, plaintiff's complaints in this case about the conditions of his confinement advance a legally frivolous argument and fail to state a claim for relief under Section 1983.

III.   <u>MEDICAL CARE</u>

Tucker was a pretrial detainee at all relevant times about which he complains.  He alleges that he received inadequate medical care for a foot fungus and rash and that, although he was prescribed an erythromycin ointment by OPP medical personnel for that condition in March 2015, he had not yet received any of it.

Before the Fifth Circuit's decision in <u>Hare v. City of Corinth</u>, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest.  <u>Bell v. Wolfish</u>,  441 U.S. 520, 539 (1979); <u>Cupit v. Jones</u>, 835 F.2d 82, 85 (5th Cir. 1987); <u>Mayweather v. Foti</u>, 958 F.2d 91 (5th Cir. 1992).  The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on

punishment of pretrial detainees." Pfannstiel v. City of Marion, 918 F.2d 1178, 1186 (5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992).

In Hare, however, the Fifth Circuit held:

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650. The Fifth Circuit explained that for the Bell "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645.  If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission, and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply.  Shepherd v. Dallas Cnty., 591 F.3d 445, 452 (5th Cir. 2009) (citing Bell, 441 U.S. at 539; Scott v. Moore, 114 F.3d 51,

16

53 (5th Cir. 1997); <u>Hare</u>, 74 F.3d at 649); <u>Tamez v. Manthey</u>, 589 F.3d 764, 769-70 (5th Cir. 2009) (citing <u>Scott</u>, 114 F.3d at 53; <u>Hare</u>, 74 F.3d at 649).

In <u>Estelle</u>, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.  Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.  <u>Estelle</u>, 429 U.S. at 105-06; <u>accord</u> <u>Gregg v. Georgia</u>, 428 U.S. 153, 182-83 (1976); <u>Tamez</u>, 589 F.3d at 770; <u>Hare</u>, 74 F.3d at 650.  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it."  <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994).  The <u>Farmer</u> definition applies to Eighth Amendment medical claims.  <u>Reeves</u>, 27 F.3d at 176.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  If the court finds that one of the components of the test is not met, it need not address the other component.  <u>Davis</u>, 157 F.3d at 1005.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."

Farmer, 511 U.S. at 834 (quotation omitted).  Thus, plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs."  Cooper v. Johnson, 353 F. App'x 965, 967 (5th Cir. 2009) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)); accord Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Tamez, 589 F.3d at 770 (citing Thompson v. Upshur County, 245 F.3d 447, 458-59 (5th Cir. 2001)).  "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"  Brewster v. Dretke, 587 F.3d 764, 770 (5th Cir. 2009) (quoting Domino v. Tex. Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference'
> is a stringent standard of fault, requiring proof that a municipal actor
> disregarded a known or obvious consequence of his action." . . .  The
> "deliberate indifference" standard permits courts to separate omissions that

amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

Southard v. Tex. Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (quoting Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added); accord Tamez, 589 F.3d at 770. "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997).

In the instant case, plaintiff's pleadings, as expanded by his testimony, establish that nothing more than episodic acts or omissions as defined in Hare are at issue. See Tamez, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'"). Therefore, the "deliberate indifference" standard applies and Tucker must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. In this case, plaintiff wholly fails to allege facts sufficient to satisfy any of the essential elements of his claim, including especially the stringent "deliberate indifference" standard.

Initially, it cannot be concluded that the conditions plaintiff described, consisting of athlete's foot, presented serious medical needs that posed a substantial risk of harm in his particular circumstances. As Dr. Nguyen's report makes clear, Tucker experienced only a mild case of athlete's foot, a minor and common condition, even within the non-

incarcerated population, that was easily addressed.  See Stepnay v. Goff, 164 Fed. Appx.

767, 2006 WL 182059, at *2 (10th Cir. 2006) (Inmate with staph infection "may not

avoid dismissal . . . by merely asserting conclusory allegations that his condition

obviously required a doctor's attention because most skin conditions are not intuitively

serious."); Tasby v. Cain, 86 Fed. Appx. 745, 2004 WL 243433, at *1 (5th Cir. 2004)

(Plaintiff's assertion that he developed a rash from being placed in restraints "does not

establish that he suffered 'serious harm.'"); Gonzalez-Reyna v. Ellis, No. 1:09cv522,

2009 WL 2421482, at *3 (E.D. Va. July 27, 2009) ("[I]t is doubtful that a skin rash, even

one which causes pain and itching, is a sufficiently serious medical need to support an

Eighth Amendment violation.").

Certainly, Tucker did not suffer "a life-long handicap or permanent loss" of the

type required to constitute a serious medical need for constitutional purposes.  See Hill

v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) (citing Monmouth

Cnty. v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay [in medical care]

results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need

is serious.'")); see also Fourte v. Faulkner Cnty., 746 F.3d 384, 389 (8th Cir. 2014) (high

blood pressure readings alone do not indicate serious medical need); Dickson v. Colman,

569 F.2d 1310, 1311 (5th Cir. 1978) (no serious medical need when plaintiff's high blood

pressure presented no "true danger" or "serious threat" to his health). Tucker's medical

records reflect, as confirmed by Dr. Nguyen's report, that he was regularly treated throughout his incarceration at OPP with medication for a variety of his complaints.

Even assuming, however, though certainly without concluding that Tucker's minor conditions presented a serious medical need for constitutional purposes, he has alleged facts, confirmed by his testimony and the medical records, that negate any inference of deliberate indifference by jail officials. His complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical care while incarcerated at the jail.

This record cannot support an inference that defendants were deliberately indifferent to plaintiff's serious medical needs in the constitutional sense. See, e.g., LaBorde v. Lowe, 471 F. App'x 390, 391 (5th Cir. 2012) (no deliberate indifference to serious medical needs when inmate "received extensive medical care and numerous prescription medications" for his high blood pressure and any other condition for which he requested treatment); Greer v. Tran, 124 F. App'x 261, 262 (5th Cir. 2005) (no deliberate indifference to serious medical needs when inmate was tested for diabetes mellitus, which was ruled out, although he ultimately died after falling into a diabetic ketoacidotic coma); Raspberry v. Johnson, 281 F.3d 1279, 2001 WL 1692494, at *1 (5th Cir. 2001) (citing Domino, 239 F.3d at 754) (Plaintiff with injured hand and bruises failed to allege deliberate indifference to serious medical needs when he was examined

by medical personnel and injuries healed on their own.); <u>Harris v. Donaldson</u>, 71 F.3d 876, 1995 WL 725438, at *2 (5th Cir. Nov. 3, 1995) (no deliberate indifference when prisoner received medical treatment for diabetes, including blood monitoring, medication and other attention, rendering his Section 1983 medical care claim merely a "quarrel with the quality and quantity of his medical treatment" for his chronic condition); <u>Maldonado v. Keesee</u>, 12 F.3d 1098, 1993 WL 543329, at *1 (5th Cir. Dec. 15, 1993) (no deliberate indifference when inmate admittedly was being treated by a doctor at the jail and receiving medication for high blood pressure).

Although Tucker has alleged some delay in receiving medical care for his athlete's foot condition in that he did not receive the treatment he thought was necessary quickly enough, and he has expressed dissatisfaction with the overall speed, quality and initial effectiveness of treatment, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Deliberate indifference is an extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted).  No such showing has been made on the current record.  In Tucker's case, the decisions of the jail's health care providers regarding how to treat his minor maladies are classic examples of the exercise of "medical judgment," which, even if incorrect, cannot serve as the basis for a finding of deliberate indifference in the constitutional sense.

Mere delay in receiving care is not in and of itself a constitutional violation.  Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006); Mendoza, 989 F.2d at 195; Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990).  Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs.  Wilson, 501 U.S. at 298.  No such showing can be made in this case.

Contentions like Tucker's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim.  "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not."  Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); see also LaBorde, 471 F. App'x at 391 (plaintiff "received extensive medical care and numerous prescription medications; he has not shown any intentional delay or refusal to

provide him with medical treatment for his high blood pressure or any other medical condition for which he requested treatment.  At most, he has established a disagreement with his treatment, unsuccessful treatment, or negligence, which does not amount to a constitutional violation."); Rowe v. Norris, 198 F. App'x 579, 581 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); Jenkins v. Lee, 84 F. App'x 469, 470 (5th Cir. 2004) (Plaintiff's summary judgment evidence and arguments "reflect nothing more than mere disagreement with the care rendered by [the prison doctor], or, at best, malpractice, which are insufficient to establish a constitutional violation," when the doctor prescribed one medication and refused plaintiff's requests for a specific, alternate medication, after plaintiff complained of discomfort, lightheadedness, dizzy spells and nausea, and suffered a blackout due to high blood pressure.); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Wesson, 910 F.2d at 284 (allegations establishing provision of medical treatment are inconsistent with inference of deliberate indifference); Williams v. Browning, No. V-03-157, 2006 WL 83433, at *1, *3 (S.D. Tex. Jan. 11, 2006) (inmate with diabetes, hypertension, anxiety and chronic knee ailment who alleged that he was unable to obtain his medications timely, but did not establish any substantial harm from the delay, failed to state a claim for deliberate indifference).

Under these circumstances, Tucker cannot state a cognizable Section 1983 claim that defendants were deliberately indifferent to his serious medical needs.  His minor athlete's foot malady has been successfully addressed.  For all of the foregoing reasons, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief based upon violation of his constitutional rights under Section 1983.

IV.   OUTDOORS RECREATION

Tucker also alleges that he has not received sufficient outdoor recreation during his imprisonment in OPP.  He complains that he is taken outside for recreation only once a week to a courtyard equipped with basketball goals and enough room to walk around, play sports, play chess and "inhale the fresh air." He clarified that his complaint concerning recreation is that he should be taken outdoors more than once a week.

The Fifth Circuit "has held that deprivation of exercise may constitute an impairment of health, which is actionable under the Eighth Amendment, and that the absence of outdoor exercise opportunities may constitute an Eighth Amendment violation."   Hewitt v. Henderson, 271 F. App'x 426, 428 (5th Cir. 2008) (citations omitted) (emphasis added).   "While neither the Fifth Circuit nor the United States Supreme Court has ever specifically held that inmates enjoy an absolute right to out-of-cell exercise, the Fifth Circuit has repeatedly held that an extended deprivation of

exercise opportunities <u>might</u> impinge upon an inmate's Eighth Amendment rights depending upon the particular facts of a given case." <u>Doolittle v. Holmes</u>, No. 06-986-C, 2010 WL 22552, at *4 (M.D. La. Jan. 4, 2010) (citing <u>Hewitt</u>, 271 F. App'x at 428; <u>Green v. Ferrell</u>, 801 F.2d 765 (5th Cir. 1986); <u>McGruder v. Phelps</u>, 609 F.2d 1023 (5th Cir. 1979)) (emphasis in original).

However, it is clear that inmates have no protected liberty interest in specific or any particular amount of outdoor recreational opportunities, and the "[d]eprivation of exercise is not a <u>per se</u> constitutional violation." <u>Lewis v. Smith</u>, 277 F.3d 1373, 2001 WL 1485821, at *1 (5th Cir. 2001) (citing <u>Stewart v. Winter</u>, 669 F.2d 328, 336 n.19 (5th Cir. 1982); <u>Miller v. Carson</u>, 563 F.2d 741, 751 n.12 (5th Cir. 1977)); <u>accord</u> <u>Sampson v. Corrs. Corp.</u>, No. 08-CV-0915, 2009 WL 837640, at *16 (W.D. La. Mar. 26, 2009) (citing <u>Smith v. Boyd</u>, 945 F.2d 1041, 1043 (8th Cir. 1991); <u>Lato v. Attorney Gen.</u>, 773 F. Supp. 973, 978 (W.D. Tex. 1991) (citing <u>Beck v. Lynaugh</u>, 842 F.2d 757, 762 (5th Cir. 1988)). To succeed on a claim under Section 1983 for lack of exercise, a prisoner must establish "the existence of any health hazard under the specific circumstances involved." <u>Ruiz v. Estelle</u>, 679 F.2d 1115, 1152 (5th Cir.), <u>amended in part, vacated in part on other grounds</u>, 688 F.2d 266 (5th Cir. 1982); <u>accord</u> <u>Delaney v. DeTella</u>, 256 F.3d 679, 684 (7th Cir. 2001); <u>Green v. Ferrell</u>, 801 F.2d 765, 771 (5th Cir. 1986).

Tucker's testimony and medical records do not support the conclusion that his once-a-week outdoor exercise caused him to suffer any health impairment that was serious or even related to lack of outdoor recreation.  Conditions of confinement may rise to the level of a constitutional violation only if they result in "a serious or significant . . . injury <u>resulting</u> <u>from</u> the challenged conditions."  <u>Strickler v. Waters</u>, 989 F.2d 1375, 1381 (4th Cir.), <u>cert. denied</u>, 114 S. Ct. 393 (1993) (emphasis added); <u>accord</u> <u>White v.</u> <u>Gregory</u>, 1 F.3d 267, 269 (4th Cir. 1993), <u>cert. denied</u>, 114 S. Ct. 931 (1994).  Any harm that Tucker may have suffered by the minor maladies he describes in this case were not serious and did not rise to the level of a constitutional violation.  <u>See, e.g.</u>, <u>Wesson v.</u> <u>Oglesby</u>, 910 F.2d 278, 284 (5th Cir. 1990) (swollen wrists with some bleeding not serious); <u>Griffin v. DeRobertis</u>, 557 F. Supp. 302, 306 (N.D. Ill. 1983) (aches and sore throat not serious); <u>cf.</u> <u>Barker v. Brantley County</u>, 832 F. Supp. 346, 352 (S.D. Ga. 1993), <u>aff'd</u>, 19 F.3d 37 (11th Cir. 1994) (pneumonia is serious medical need). As discussed above in connection with his medical care claim, plaintiff certainly did not suffer "a life-long handicap or permanent loss" of the type required to constitute a serious medical need for constitutional purposes.  <u>See</u> <u>Hill</u>, 40 F.3d at 1188; <u>Monmouth County</u>, 834 F.2d at 347 (medical need is serious when it "results in an inmate's suffering 'a life-long handicap or permanent loss'"); <u>Dickson</u>, 569 F.2d at 1311 (no serious medical need when plaintiff's high blood pressure presented no "true danger" or "serious threat" to his

health).  Tucker's minor ailments do <u>not</u> rise to the level of serious medical needs implicating any constitutional violation arising from his once-a-week outdoor exercise regimen.

V.    <u>NO LIABILITY OF THE SHERIFF</u>

Tucker has named only Sheriff Gusman as defendant in this case, although he has made no allegations that Sheriff Gusman has been personally involved in any of the actions about which he complains.  Thus, he appears to name the sheriff as a defendant based solely upon his official responsibilities over his deputies and the parish jail facility.

"There is no respondeat superior liability under section 1983."  <u>Eason v. Thaler</u>, 73 F.3d 1322, 1327 (5th Cir. 1996); <u>accord</u> <u>Field v. Corrections Corp.</u>, 364 F. App'x 927, 2010 WL 517679, at *1 (5th Cir. 2010); <u>Cox v. Irby</u>, 281 F. App'x 390, 391 (5th Cir. 2008); <u>Kohler v. Englade</u>, 470 F.3d 1104, 1114-15 (5th Cir. 2006).  Thus, this defendant cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in his employ or under his supervision.  <u>Sanders v. English</u>, 950 F.2d 1152, 1160 (5th Cir. 1992); <u>Baskin v. Parker</u>, 602 F.2d 1205, 1208 (5th Cir. 1979); <u>Barksdale v. King</u>, 699 F.2d 744, 746 (5th Cir. 1983).

To hold the sheriff liable, plaintiff must establish either that he was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal

28

connection exists between an act of [this defendant] . . . and the alleged constitutional violation."  Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Cox, 281 F. App'x at 391; Kohler, 470 F.3d at 1115.  "It is facially evident that this test cannot be met if there is no underlying constitutional violation."  Rios v. City of Del Rio, 444 F.3d 417, 425-26 (5th Cir. 2006) (citing Breaux v. City of Garland, 205 F.3d 150, 161 (5th Cir. 2000)).  In the instant action, plaintiff has failed to establish either that the sheriff was personally involved in any acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of the sheriff and the alleged constitutional violation.

A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury.  Monell v. Dep't of Social Servs., 436 U.S. 658, 691-95 (1978); Thompson v. Johnson, 348 F. App'x 919, 921 (5th Cir. 2009) (citing Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992)); Gates v. Texas Dep't of Protective & Regulatory Servs., 537 F.3d 404, 435 (5th Cir. 2008). Without alleging a particular custom, usage or policy for which the sheriff can be held constitutionally liable, plaintiff fails to state a claim for relief under Section 1983.  Monell, 436 U.S. at 691-95; Thompson, 348 F. App'x at 921-22; Mouille, 977 F.2d at 929. No such unconstitutional custom, usage or policy has been alleged in this case.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

Because I am recommending that the complaint be dismissed as legally frivolous and/or for failure to state a claim as a screening matter pursuant to 28 U.S.C. § 1915A, **IT IS FURTHER RECOMMENDED** that defendant's motion to dismiss, Record Doc. No. 3, be **DISMISSED AS MOOT.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v.</u>

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this \_\_\_23rd\_\_\_ day of October, 2015.

_____

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.